1

2

3

4

5

6                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
7                                        AT SEATTLE

8    CARRI ANN KENTCH,

9                            Plaintiff,                    Case No. C12-1890-JLR-BAT

10              v.                                         **REPORT AND
                                                          RECOMMENDATION**
11   CAROLYN W. COLVIN, Commissioner of
     Social Security,
12
                             Defendant.
13

14          Carri Ann Kentch seeks review of the denial of her application for disability insurance

15   benefits.  She contends that the ALJ erred by (1) improperly assessing her residual functional

16   capacity, and (2) improperly evaluating her credibility.  Dkt. 16.  As discussed below, the Court

17   recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further

18   administrative proceedings.

19                                       **BACKGROUND**

20          Ms. Kentch was born in  1979 and was 30 years old on the date last insured.  Tr. 26.  She

21   has a high school education, and previously worked as a customer service clerk.  *Id.*  On June 2,

22   2010, Ms. Kentch applied for benefits, alleging disability beginning on April 1, 2002.  Tr. 16.

23   The Commissioner denied her application initially and on reconsideration.  Tr. 57-59, 62-63.

REPORT AND RECOMMENDATION - 1

Ms. Kentch requested a hearing which took place on June 14, 2011.  Tr. 32-54.  On August 18, 2011, the ALJ issued a decision, finding Ms. Kentch not disabled.  Tr. 16-27.  The Appeals Council denied Ms. Kentch's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, [1] the ALJ found:

**Step one:**  Ms. Kentch had engaged in substantial gainful activity from January 2003 through June 2004.  However, there had been a continuous 12-month period during which Ms. Kentch did not engage in substantial gainful activity.

**Step two:**  Ms. Kentch had the following severe impairments:  multiple sclerosis.

**Step three:**  This impairment did not meet or equal the requirements of a listed impairment. [2]

**Residual Functional Capacity:**  Ms. Kentch could perform the full range of sedentary work.

**Step four:**  Ms. Kentch was unable to perform her past relevant work.

**Step five:**  Ms. Kentch is capable of performing other jobs that exist in significant numbers in the national economy and, therefore, is not disabled.

Tr. 13-27.

## DISCUSSION

**A.      The ALJ's evaluation of Ms. Kentch's credibility**

Ms. Kentch argues that the ALJ erred in finding her testimony not fully credible.  The ALJ did not find Ms. Kentch was malingering and thus was required to provide "specific, clear and convincing" reasons to reject her testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  An ALJ may consider "ordinary techniques of credibility evaluation," including

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

1   the claimant's reputation for truthfulness, inconsistencies in the claimant's testimony or between

2   the testimony and the claimant's conduct, daily activities, work record, and testimony from

3   physicians and third parties concerning the nature, severity, and effect of the symptoms. *Smolen*

4   *v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

5        *1.    Ms. Kentch's activities of daily living*

6        The ALJ discounted Ms. Kentch's testimony, first finding that her ability to plan for,

7   conceive, and raise her three children as a stay at home mother during the alleged period of

8   disability undermined her credibility. Tr. 22. Although Ms. Kentch reported that she received

9   assistance from her husband and mother, the ALJ noted that her husband was working full-time

10   and her mother visited only twice per week. *Id*. An ALJ may properly consider a claimant's

11   "daily activities, such as attending to the needs of her . . . young children, cooking,

12   housekeeping, laundry, shopping" as evidence that is inconsistent with a claim of disability. *See*

13   *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2011). Citation of Ms. Kentch's daily

14   activities, including her efforts to raise her three young children, constituted clear and convincing

15   reasons to challenge her credibility. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

16        *2.    Ms. Kentch's work history*

17        The ALJ discounted Ms. Kentch's credibility because she continued to work at the

18   substantial gainful activity level through June 30, 2004, more than two years after her alleged

19   onset date. Tr. 22. Although Ms. Kentch initially alleged disability beginning on April 1, 2002,

20   she acknowledged at the hearing that she had engaged in substantial gainful activity through June

21   30, 2004, and was not disabled through that period. Tr. 35-38. As Ms. Kentch agrees that she

22   was not disabled through June 30, 2004, the fact that she continued to work through that period

23   was not a specific, clear and convincing reason to discount her testimony.

REPORT AND RECOMMENDATION - 3

The ALJ also discounted Ms. Kentch's testimony because it appeared that she stopped working because she was "six months pregnant and desiring to be a stay at home mother," rather than because of her disabling impairments.  Tr. 22, 109 ("I stopped working or changed the type of work I was doing [because] . . . I was 6 months pregnant").  The fact that Ms. Kentch stopped working for reasons unrelated to her alleged impairments was a proper basis to discount her credibility.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (finding that an ALJ properly discounted a claimant's credibility in light of, inter alia, evidence showing that the claimant's job ended "because he was laid off, rather than because he was injured").  The ALJ's interpretation is not unreasonable and should therefore be affirmed.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

      *3.     Ms. Kentch's failure to follow treatment*

The ALJ next discounted Ms. Kentch's allegations of dizziness, vertigo, loss of balance, and numbness in her feet because she postponed recommended immune-modulating therapy for her multiple sclerosis ("MS") for seven years.  Tr. 22-23.  The ALJ noted that Ms. Kentch had reported vertigo as early as November 2002 and was prescribed meclizine to be taken as needed.  Tr. 22, 260, 379, 645.  In addition, the ALJ noted that in June 2009 Ms. Kentch's treating neurologist, Carolyn Taylor, M.D., found Ms. Kentch had absent vibratory sensation in both feet, diminished temperature sensation to her knees, and positive Romberg test.  Tr. 22, 260.  The ALJ found Dr. Taylor's report was consistent with Ms. Kentch's allegations of dizziness, vertigo, loss of balance, and numbness in her feet.  *Id*.  Nevertheless, the ALJ rejected Ms. Kentch's testimony regarding the intensity, persistence, and limiting effects of these symptoms because of her "refusal to under go immune therapy . . . based on claimant not wishing to do injections."  Tr. 22.  The ALJ stated that although Ms. Kentch was urged to consider immune-modulating therapy

as early as 2002 she did not start immune-modulating therapy injections until July 2009, after an

MRI revealed approximately 40 new lesions and evidence of active disease.  Tr. 23, 259, 605.

The ALJ stated that although Ms. Kentch indicated that she "did not start immune-

modulating therapy earlier because of financial concerns there is evidence in the record which

suggests she was given help in seeking financial assistance for the therapy."  Tr. 23, 582.  The

ALJ also noted that Ms. Kentch expressed repeated interest in holding off on injection therapy

until an oral form of the medication became available.  Tr. 23.

A claimant's unexplained or inadequately explained failure to follow prescribed

treatment can be a clear and convincing reason to question a claimant's credibility.  *Fair v.*

*Bowen*, 885 F.3d 597, 603 (9th Cir. 1989).  But where a claimant has a good reason for not

following her prescribed treatment, this failure cannot be a reason to deny benefits.  *Orn v.*

*Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Here, the record reflects that plaintiff did not undergo immune-modulating therapy

because she could not afford it and had difficulties maintaining health insurance.  Tr. 43, 273,

341, 374, 546, 605, 608, 638.  In addition, the record indicates that Ms. Kentch was unable to

undergo immune-modulating therapy injections while pregnant and, therefore, was unable to

begin immune-modulating therapy injections until after she delivered her third child in May

2009.  Tr. 43, 273, 277, 638, 640.  Although there is a notation in the record that Ms. Kentch

may be eligible for financial assistance for the therapy, there is no indication in the record that

she was ever granted or received financial assistance.  Tr. 582.  Under these circumstances, Ms.

Kentch's failure to comply with prescribed treatment does not provide substantial evidence for

questioning the credibility of her accounts of her symptoms.  *See Regennitter v. Soc. Sec.*

*Comm'r*, 166 F.3d 1294, 1297 (9th Cir. 1999) ("[W]e have proscribed the rejection of a

claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it.").  The ALJ's reason for rejecting Ms. Kentch's allegations of dizziness, vertigo, loss of balance, and numbness in her feet is irrelevant and inaccurate.

4.      *Conservative treatment and treatment gaps*

The ALJ discounted Ms. Kentch's allegations of frequent headaches and chronic pain because she "only received conservative treatment for these complaints and that treatment was effective." Tr. 23, 373.  To support that assertion, the ALJ noted that in March 2008 Ms. Kentch "advised Dr. Werner that she was able to control her frequent headaches with ibuprofen (while denying severe headaches) and Dr. Werner advised her to continue using ibuprofen for her pain." *Id*.  Impairments that can be controlled effectively controlled via medication are not disabling. *See Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006).  However, the ALJ's reasoning is not supported by substantial evidence in the record because the ALJ failed to address evidence in May 2008 that Ms. Kentch reported headaches and chronic pain to Dr. Taylor and requested Vicodin.  Tr. 546-47.  Dr. Taylor initially declined to prescribe Vicodin because of the addicting potential, but prescribed Tramadol for her pain.  Tr. 547.  The medical record further shows that Ms. Kentch continued to complain of headaches and chronic pain and that both Dr. Werner and Dr. Taylor prescribed Tramadol, Percocet, and Vicodin through the relevant period.  Tr. 211, 214-15, 217, 218-20, 235, 257, 258, 259, 260, 550-56.

The ALJ also discounted Ms. Kentch's allegations of frequent headaches and chronic pain due to "gaps" of a year or more in Ms. Kentch's treatment.  Tr. 23.  An unexplained failure to seek medical treatment may be the basis for an adverse credibility finding unless the claimant can provide an acceptable reason for not seeking treatment.  *See Orn*, 495 F.3d at 638.  However, a review of the records does not show "significant gaps of a year or more."  *See* Tr. 209-99, 327-

44, 369-648.  As indicated above, Ms. Kentch reported worsening headaches and pain in 2008

and consistently sought and received medical treatment.  Tr. 43-44, 211, 214-15, 217, 218-20,

235, 257, 258, 259, 260, 550-56.  The ALJ thus erred in rejecting Ms. Kentch's testimony

regarding her headaches and pain due to treatment gaps.

      Additionally, the ALJ discounted Ms. Kentch's testimony regarding the severity of her

heat sensitivity.  Tr. 23, 41.  The ALJ acknowledged that Ms. Kentch's testimony was somewhat

consistent with notations in the medical record that she was sensitive to heat, but discounted this

symptom because she rarely discussed it with her doctors and there is no evidence that she ever

sought treatment for this symptom.  Tr. 23.  The Commissioner argues that the failure to report

symptoms or limitations to treatment providers is a legitimate reason to discount the severity of

Ms. Kentch's condition.  Dkt. 20 at 6 (citing *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.

2006) (finding claimant's failure to report symptoms to a treating provider a clear and

convincing reason to reject the claimant's testimony).  However, this reasoning is inapplicable to

Ms. Kentch, who has severe multiple sclerosis.  Tr. 23.  "Heat sensitivity is common in people

with multiple sclerosis.  Small increases in body temperature can trigger or worsen multiple

sclerosis symptoms."  Mayo Clinic, http://www.mayoclinic.com (last visited Aug. 5, 2013).  It is

therefore recommended that MS patients avoid temperature extremes.  *Id*.  There is no specific

treatment for heat sensitivity.  Accordingly, Ms. Kentch's failure to seek medical treatment was

not a specific and legitimate reason to reject her testimony regarding her heat sensitivity.

     5.   *Medical record*

      The ALJ discounted Ms. Kentch's regarding the severity of her bladder problems and

problems swallowing because they were minimally addressed and did not appear to be

significantly limiting.  Tr. 23-24.  The ALJ noted that Ms. Kentch's swallowing problems,

reported in 2002 and 2011, were described as an occasional issue, and that her bladder problems were linked to her pregnancies.  Tr. 23-24.  The ALJ also found Ms. Kentch's reports of tingling in her left upper extremity were sporadic and did not indicate a significant impairment.  Tr. 24. These are proper reasons to discount Ms. Kentch's credibility regarding bladder problems, difficulty swallowing, and tingling in her upper extremity.  *Fair*, 885 F.2d at 603-04.

    6.    *Inconsistencies*

    The ALJ next discounted Ms. Kentch's allegations that she suffers from fatigue and must rest frequently between activities.  Tr. 24.  The ALJ acknowledged that Ms. Kentch's testimony was consistent with reports of fatigue in the medical evidence and considered this limitation in limiting her to sedentary work.  Nevertheless, the ALJ discounted her testimony that she could not stand for more than 15 minutes at a time, sit for more than 2 hours in an 8-hour workday, or lie down, because it was not clear what posture she could assume throughout the day.  *Id*.  This reason is not supported by substantial evidence.  Ms. Kentch testified that she could not lie completely flat because it triggers her vertigo symptoms – not that she could not lie down.  Tr. 41, 152, 546, 550, 639.  Ms. Kentch's testimony regarding her ability to lie down is not a specific and legitimate reason to reject her testimony regarding the severity of her fatigue, particularly given the fact that the ALJ found her reports of fatigue were consistent with the medical evidence.

    The ALJ further found Ms. Kentch's allegations of fatigue were undermined by evidence that she was "in no acute distress" during examinations by her doctor.  Tr. 24 (citing 214, 352). However, the ALJ also indicated that he found evidence in the record that supported Ms. Kentch's allegations of fatigue.  Tr. 24.  The two examples cited by the ALJ are selective, insignificant references to boiler plate language and do not support a sufficient reason to reject

1    Ms. Kentch's testimony regarding her fatigue, the evidence in the record clearly shows

2    otherwise.  Tr. 257, 260, 262, 269, 272, 273, 275, 334, 344, 358.

3         Finally, the ALJ discounted Ms. Kentch's testimony of lifting limitations as inconsistent

4    with the evidence in the medical record.  Tr. 24.  The ALJ did not identify the particular

5    evidence to which he was referring, however.  Accordingly, this is not a specific, clear and

6    convincing reasons to reject her testimony.

7         7.    *The ALJ's errors were not harmless*

8         Because some of the ALJ's reasons supporting his adverse credibility finding are invalid,

9    the Court must determine whether the ALJ's reliance on such reasons was harmless error.  *See*

10   *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9th Cir. 2004) (applying

11   harmless error standard where one of the ALJ's several reasons supporting an adverse credibility

12   finding was held invalid).  Under *Batson*, so long as there remains "substantial evidence

13   supporting the ALJ's conclusions on . . . credibility" and the error "does not negate the validity

14   of the ALJ's ultimate conclusion," the error is deemed harmless and does not warrant reversal.

15   *Id*. at 1197.  The relevant inquiry in this context is not whether the ALJ would have made a

16   different decision absent any error.  Rather, it is whether the ALJ's decision remains legally

17   valid, despite such error.  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63

18   (9th Cir. 2008).

19        Here, the Court cannot conclude that the ALJ's adverse credibility assessment is valid.

20   Because of the ALJ's substantial reliance on invalid reasons, the Court is not confident that

21   substantial evidence supports the ALJ's ultimate conclusion, despite the existence of some valid

22   reasons to question Ms. Kentch's credibility.  The vocational expert testified that a need to take

23   frequent rest breaks would likely preclude the sedentary jobs identified.  Tr. 50.  Accordingly,

1   this case should be remanded for further findings evaluating the credibility of Ms. Kentch's

2   subjective complaints.

3   **B.      The ALJ's evaluation of Ms. Kentch's residual functional capacity**

4          At step four, the ALJ must identify the claimant's functional limitations or restrictions,

5   and assess his or her work-related abilities on a function-by-function basis, including a required

6   narrative discussion.  *See* 20 C.F.R. § 404.1545; SSR 96-8p.  Residual functional capacity

7   ("RFC") is the most a claimant can do considering his or her limitations or restrictions.  *See* SSR

8   96-8p.  The ALJ must consider the limiting effects of all of the claimant's impairments,

9   including those that are not severe, in determining RFC.  20 C.F.R. § 404.1545; SSR 96-8p.

10         In this case, the ALJ found Ms. Kentch capable of performing the full range of sedentary

11  work, with no other limitations.  Tr. 21.  Ms. Kentch argues that the ALJ erred in assessing her

12  RFC because the ALJ misstated the opinions of the State agency medical consultants Guillermo

13  Rubio, M.D., and Thomas Clifford, Ph.D., upon which he purportedly relied.  Dkt. 16 at 9-13.

14         *1.      Guillermo Rubio, M.D.*

15         On August 17, 2010, Dr. Rubio reviewed the record and completed a Physical Residual

16  Functional Capacity Assessment.  Tr. 301-08.  Dr. Rubio assessed no physical limitations, noting

17  that there was insufficient evidence to rate her activities of daily living, diagnosed residuals, and

18  other functioning between the period from June 30, 2004 to March 31, 2005, her date last insured

19  ("DLI").  *Id.*  However, Dr. Rubio's used an incorrect DLI of March 31, 2005, instead of

20  September 30, 2009.  Tr. 16.

21         The ALJ explicitly noted that Dr. Rubio had premised his opinion on an incorrect DLI of

22  March 31, 2005.  Tr. 24.  Nevertheless, the ALJ accorded significant weight to Dr. Rubio's

23  opinion, mistakenly believing that Dr. Rubio had found Ms. Kentch capable of performing light

1   work, when in fact Dr. Rubio had stated there was insufficient information to form an opinion.

2   The ALJ stated that Dr. Rubio had reviewed the medical evidence and determined that Ms.

3   Kentch could "lift up to ten pounds frequently, twenty pounds occasionally, stand and/or walk

4   six hours in an eight hour day, sit about six hours in an eight hour day, unlimited pushing or

5   pulling." Tr. 24.  The ALJ found these findings were consistent with the medical evidence and

6   with Ms. Kentch's testimony at the hearing.  *Id*.  In addition, the ALJ noted that Dr. Rubio "had

7   reviewed the medical evidence in the record following May 2005, and as of the date of his

8   review August 17, 2010, claimant was 'doing well.'"  *Id*.

9          The ALJ then discounted Dr. Rubio's findings, stating that although Dr. Rubio opined

10  Ms. Kentch could perform light work, "it is not clear he considered the evidence that claimant

11  suffered from fatigue and could not stand for long periods of time, which appears in the record

12  and in claimants allegations, after the May 2005 period Dr. Rubio considered." Tr. 25.  The ALJ

13  concluded that Ms. Kentch was limited to sedentary work, which involves "lifting no more than

14  ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and

15  small tools," and "periods of standing or walking . . . total[ing] no more than about 2 hours of an

16  8-hour workday."  SSR 83-10; 20 C.F.R. § 404.1567.

17         The Commissioner concedes that the ALJ erred in stating that Dr. Rubio opined Ms.

18  Kentch could perform light work, but contends this error was harmless because the ALJ

19  ultimately concluded that Ms. Kentch was limited to sedentary work.  Dkt. 20 at 10.  The

20  Commissioner asserts that Ms. Kentch testified that she could lift or carry twenty pounds rarely

21  and eight pounds frequently, thus the ALJ found she was capable of performing work that she

22  testified she could do.  The Commissioner contends that because the evidence shows Ms. Kentch

23  could meet the lifting and standing requirements of sedentary work, the issue of Dr. Rubio's

1     statement that she could perform light work is inconsequential to the ALJ's ultimate disability

2     determination.  The Commissioner's assertion is not well taken.

3          Even if the evidence reasonably shows Ms. Kentch could perform the lifting and standing

4     requirements of sedentary work, the ALJ failed to address any pushing or pulling, postural, or

5     environmental limitations that would reduce that work capacity to something lower than

6     sedentary work based, in part, on the flawed assumption that Dr. Rubio opined she was capable

7     of a full range of light work.  A claimant's RFC must be based upon the medical evidence in the

8     record and other evidence, such as testimony by the claimant or her friends and family.  20

9     C.F.R. § 404.1545(a)(3).  The ALJ's error in finding that his RFC assessment was "supported by

10     Dr. Rubio's review of the claimant's medical evidence and the medical record as a whole"

11     prevents the Court from engaging in meaningful review of the ALJ's decision because it cannot

12     speculate as to how the ALJ's decision might have been different had he correctly assessed the

13     evidence before him.  Therefore, the Court finds that the ALJ committed legal error that was not

14     harmless.  For this reason, the ALJ's misstatement of the record renders his physical RFC

15     determination deficient and requires remand.

16          2.     *Thomas Clifford, Ph.D.*

17          On August 17, 2010, Dr. Clifford reviewed the record and completed a Psychiatric

18     Review Technique form.  Tr. 311-24.  Like Dr. Rubio, Dr. Clifford premised his opinion on an

19     incorrect DLI of March 31, 2005.  Dr. Clifford noted that there was medical evidence indicating

20     that Ms. Kentch had "issues of depression and anxiety, and fear of leaving her home" after the

21     DLI, but that there was insufficient evidence to diagnose or rate her depression or anxiety

22     allegations in terms of any potential impact on her ability to work and her mental capabilities

23     from June 30, 2004 to March 31, 2005.  Tr. 323.  He also stated that "[a] review indicates that

1    there is [medical evidence of record] after the DLI [March 31, 2005] and to current period

2    [August 17, 2010] indicating that currently she is stable." *Id.*

3          The ALJ noted that "[f]or the medical records for the period in which he was reviewing,

4    Dr. Clifford was unable to establish any impairment from depression/anxiety." Tr. 25.  The ALJ

5    stated, "Although Dr. Clifford's opinion did not consider evidence after May 2005, his opinion is

6    consistent with the medical evidence in the record and his opinion is therefore given significant

7    weight." Tr. 25.

8          Ms. Kentch argues that, contrary to the ALJ's assertion, Dr. Clifford actually reviewed

9    the record after March 2005 through June 2010 and found medical evidence indicating that she

10   had issues of depression, anxiety, and fear of leaving her home after March 2005.  Ms. Kentch

11   asserts that "the ALJ erred in his mental RFC assessment because he lacked a foundation to find

12   that Plaintiff does not have any severe mental impairments prior to her true DLI of September

13   2009." Dkt. 16 at 11.  She further contends that, even if her depression and anxiety were not

14   severe, the ALJ erred by failing to consider the total limiting effects of all of her impairments in

15   the RFC assessment.  *Id*. at 12.

16         This error, however, was harmless as Dr. Clifford did not assess any limitations and

17   found the medical evidence showed Ms. Kentch's depression and anxiety were stable after

18   March 31, 2005 to August 17, 2010.  Tr. 323.  Ms. Kentch does not demonstrate how the ALJ's

19   characterization of Dr. Clifford's opinion harmed her or otherwise demonstrates limitations not

20   accounted for by the ALJ.  Even though the ALJ found Ms. Kentch's mental impairments not

21   severe at step two, he properly considered Ms. Kentch's depression and anxiety when

22   formulating the RFC at step four.

23         The ALJ also appropriately considered Ms. Kentch's mental impairments at step two and

determined that although her depression and anxiety were medically determinable impairments, they did not cause more than minimal limitations in her ability to perform basic work activities and, therefore, were not severe.  The ALJ applied the "special technique" for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a, to rate the degree of functional limitation resulting from her mental impairments in activities of daily living, social functioning, concentration, persistence, and pace, and episodes of decompensation.  Tr. 19-20.

In the first area, the ALJ found Ms. Kentch had mild limitation in activities of daily living.  Tr. 19.  Ms. Kentch reported being able to go shopping with her husband, mother-in-law or a friend, raise her three children as a stay at home mother, and perform cooking and household chores for her family.  Tr. 19, 145-52.  In the second function area, the ALJ found Ms. Kentch had mild limitations in social functioning.  Tr. 20.  The ALJ noted that she was able to go to the grocery store and the doctor's office on a regular basis, spend time with her husband and kids every day, have her mother-in-law visit twice a week, and visit with others on the phone, and get along well with authority figures.  Tr. 19, 145-52.  In the third functional area, the ALJ found Ms. Kentch had mild limitations in concentration, persistence, or pace.  Tr. 20.  Ms. Kentch reported that she was able to read, drive, follow written instructions, and spend an entire weekend playing video games.  Tr. 20, 145-52.  The ALJ also observed Ms. Kentch had demonstrated on mental status exam normal attention span, concentration, and remote and recent memory.  Tr. 20, 214, 352.  In the fourth area, the ALJ found Ms. Kentch had experienced no episodes of decompensation which have been of extended duration.  Tr. 20.  Based on these findings, the ALJ concluded that because Ms. Kentch's medically determinable mental impairments caused no more than mild limitation in any of the first three functional areas and no episodes of decompensation, they were non-severe.  Tr. 20 (citing 20 C.F.R. § 404.1520a(d)(1)).

Ms. Kentch argues that the ALJ erred by relying on her adult function report and a lay witness statement because the ALJ later rejected her credibility and the lay witness testimony. Dkt. 16 at 12; Dkt. 21 at 10.  However, the fact that the ALJ rejected Ms. Kentch's and the lay witness's testimony regarding the intensity, persistence, and limiting effects of Ms. Kentch's symptoms does not effect the ALJ's reliance on statements regarding Ms. Kentch's daily and social activities contained in the adult function reports.  The ALJ also relied on other evidence in the record, including mental status examination findings by Dr. Werner which showed Ms. Kentch was "alert and cooperative; normal mood and affect; normal attention span and concentration; remote and recent memory appear to be intact."  Tr. 20, 214, 352.  Additionally, the ALJ noted that Shayne Mora, M.D., reported Ms. Kentch was a full time stay at home mom. Tr. 19, 548.  Ms. Kentch has failed to meet her burden of showing any error in the ALJ's mental RFC assessment.  The Court accordingly affirms the ALJ's finding.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to sentence four.  On remand, the ALJ should reevaluate Ms. Kentch's credibility, reevaluate the medical evidence as to her physical RFC, develop the record as necessary, reassess Ms. Kentch's physical RFC as appropriate, and proceed to steps four and five as needed.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **August 27, 2013.**  If no objections are filed, the matter will be ready for the Court's consideration on **August 30, 2013**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the

REPORT AND RECOMMENDATION - 15

1  date the objection is filed and served.  Objections and responses shall not exceed twelve pages.

2  The failure to timely object may affect the right to appeal.

3        DATED this 12th day of August, 2013.

4

5        _____
         BRIAN A. TSUCHIDA
6        United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 16